

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Gregory Weizeorick, individually
and on behalf of all others
similarly situated

    Plaintiff,

v.

ABN AMRO Mortgage Group, Inc.,
a Delaware Corporation,

    Defendant.

Case No. 01 C 713

The Honorable William J. Hibbler

## MEMORANDUM OPINION AND ORDER

About the only thing that the parties agree upon in this messy, RESPA dispute is that RESPA prohibits sharing unearned fees. *Durr v. Intercounty Title Co. of Ill.*, 14 F.3d 1183, 1186 (7th Cir. 1994). Despite the factual disputes, however, both parties have moved for summary judgment, and to resolve these motions the Court must view the facts for purposes of each motion through the lens most favorable to the non-moving party, drawing all reasonable inferences and resolving all factual uncertainties against the party whose motion is under consideration.

Gregory Weizeorick and his wife, Margaret, who was at one time also a plaintiff in this suit, sold their home in 2000. On July 18, 2000, ABN/AMRO Mortgage Group (AAMG), which had serviced the loan that was secured by the mortgage encumbering the Weizeoricks' residence, sent via facsimile a Payoff Statement to the law firm of Gomolinski and Phillips, Ltd. (Pl. 56.1(a)(3) Statement Ex. F). The Payoff Statement set forth the outstanding principal balance, accrued interest,

1

and charges necessary to fully discharge the Weizeoricks' loan, and included a $10 charge for Recording Discharge/Release of Lien Fee. (Id.). Six days later, the Weizeoricks closed on the sale of their residence at the offices of Gomolinski and Phillips, some of whose lawyers now represent the Weizeoricks in this case.

Marianne Schindler conducted the Weizeoricks' closing, Attorney's Title Guaranty Fund (ATGF) served as the settlement agent, and AAMG did not attend the closing. At the closing, Schindler collected $92,483.12 from the Weizeoricks to pay off their existing loan, which included the $10 fee charged by AAMG to record the release of the Weizeoricks' mortgage. Schindler also collected $8,063.00 in settlement charges from the Weizeoricks. Line 1114 of the Settlement Statement charged the Weizeoricks $25.50 and was labeled as a "Release Fee." Neither Schindler nor Gomolinski informed the Weizeoricks that this fee was duplicative.

At the closing, Gomolinski was issued a check for $449 as a "Member Disbursement." ATGF prepared a form, the "Policy Transmittal Form," that itemized the disbursement to Gomolinski. The Policy Transmittal Form lists, among other items, Line 1114 as part of the money from the settlement that was disbursed to Gomolinski. The Policy Transmittal Form also deducts from the payment to Gomolinski certain fees charged by ATGF for its services, and does not deduct any charge for recording the release of mortgage.

After the closing, Gomolinski sent AAMG a letter requesting that it forward to him the release of mortgage and cancelled documents. Gomolinski did not inform AAMG that he intended to record the release himself or that ATGF had charged a fee at the closing in order to record the release of the mortgage. AAMG complied with Gomolinski's request. Gomolinski forwarded the

release to ATGF, which recorded the release. Later, ATGF sent Gomolinski a bill for $23.50 for "Recording-RELEASE" that referenced the Weizeoricks' closing.

Weizeorick argues that $35.50 in fees was collected by Schindler at closing for the recording and release of his mortgage and that AAMG received a portion of this fee without actually recording the release of his mortgage. AAMG, on the other hand, argues that the $25.50 itemized in Line 1114 of the Settlement Statement was not a recording fee at all because it was returned to the Weizeoricks' lawyer, Gomolinski, and that the $10 fee it charged in the payoff statement was the only recording fee the Weizeoricks incurred.

Section 8(b) of RESPA states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). The Seventh Circuit has consistently held that Section 8(b) is "not violated unless the defendant splits a fee with a third party." *Weizeorick v. ABN AMRO Mortg. Group, Inc.*, 337 F.3d 827 (7th Cir. 2003); *see also Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 627 (7th Cir. 2001). In other words, a fee must be split between two parties and merely receiving a windfall or pocketing an overage does not violate Section 8(b). *Echevarria*, 256 F.3d at 626; *Durr v. Intercounty Title Co.*, 14 F.3d 1183, 1184-85 (7th Cir. 1994). Therefore, if the $10 fee charged by AAMG in the payoff statement is the only fee charged to Weizeorick to record the mortgage, it does not matter that AAMG never recorded the mortgage because this fee was never split. On the other hand, if Weizeorick paid duplicative fees for the recording and release of mortgage from the pool of funds involved in the closing, then AAMG received a portion of those fees without actually

3

performing the work.[1] Thus, resolution of this case turns upon whether the $25.50 listed in Line 1114 actually was a fee charged by ATGF to record the release of the mortgage. *See Weizeorick*, 337 F.3d at 833. This material fact, however, is contested, and so summary judgment is not proper.

On the one hand, Line 1114 purports to be a $25.50 fee charged to record the release of the Weizeoricks' mortgage. Marianne Schindler, ATGF's closing agent, testified at her deposition that this fee was paid to ATGF. (Schindler Dep. at 60). Gomolinski testified at his deposition that in addition to serving as the Weizeoricks' attorney, he also served as an agent for ATGF and collected fees for services that he performs for them. (Gomolinski Dep. at 52-55; 72-75). And Gomolinski did in fact contact AAMG to obtain the release of mortgage and did forward that release to ATGF for recording. Taken in the light most favorable to Weizeorick, as the Court must when considering AAMG's motion, a reasonable fact-finder could conclude that the $25.50 listed in Line 1114 was a fee charged by ATGF to record the release of mortgage, and thus a jury could find that AAMG split a fee with ATGF. AAMG therefore is not entitled to summary judgment.

When the evidence is viewed in the light most favorable to AAMG, however, a different picture emerges. AAMG argues both that the $25.50 was returned to the Weizeoricks' real estate attorney, Gomolinski, and that Gomolinski orchestrated a sham fee split. Under either scenario,

---

[1] AAMG argues that it did not have control over the closing and that therefore it cannot be responsible for ATGF's actions. But the Seventh Circuit has already rejected such an argument. *Weizeorick*, 337 F.3d at 832-833 (noting that a distinction between a defendant who had control over the closing and one who did not is not relevant because the "statute does not place liability on only the entity who pays out the alleged kickback, but instead places liability on both the giver and receiver of an unearned kickback."). Further, some parts of § 2607 contain defenses for unintentional violations, but § 2607(b) does not. AAMG knew that it had charged a $10 fee for recording the release of the mortgage and it also knew that it never performed that service. AAMG could have easily protected itself by immediately refunding the $10 it collected when it forwarded the release to Gomolinski, because at that time it knew that it would not be recording the release.

4

AAMG argues, ATGF did not collect a $25.50 fee for the release of mortgage from the pool of funds brought to the settlement. Both are conclusions a jury might reasonably reach.

It is undisputed that Gomolinski received a check at the closing in the amount of $449 as a member disbursement. The Policy Transmittal Form itemizes the $449, and includes Line 1114—the fee purportedly charged by ATGF to record the release of mortgage. Although Weizeorick argues that the $25.50 was given to Gomolinski in his role as ATGF's agent and not in his role as his counsel, that is not the only conclusion a jury might reach. The Policy Transmittal Form deducts from the disbursement to Gomolinski certain fees owed to ATGF for its services and does not include a charge for recording the release of the mortgage. ATGF's Senior Vice President, August Butera, in fact testified at his deposition that no ATGF "takes out the part that they need . . . [a]nd then, Mr. Gomolinski gets the rest." (Butera Dep. at 87-88, 92-93). From these facts, a jury could find that the $25.50 charged to the Weizeoricks at closing was not, in fact, collected by ATGF, but instead was returned to their attorney.

It is also undisputed that AAMG did not attend the closing and that the Weizeoricks' real estate attorney, William Gomolinski, wore two hats at closing — one as the Weizeoricks' attorney and one as an agent of ATGF, which conducted the closing. At the closing, Gomolinski, despite being obligated to serve as the Weizeoricks' counsel never notified them that they were being charged duplicative fees to record the release of their mortgage or that he himself was receiving one of those purported fees. AAMG had no knowledge of the fee purportedly charged by ATGF, but which was returned to Gomolinski at closing. And Gomolinski requested that AAMG send him the release of mortgage, without informing it that a duplicate release fee had been charged. Given these facts, Gomolinski's hands certainly do not appear to be clean. The fact that Gomolinski's partners

5

brought this suit, after Gomolinski himself received the $25.50 charged to the Weizeoricks at closing, is yet another fact supporting the inference that he and his partners orchestrated a sham fee split in order to entrap AAMG into violating RESPA. A jury could find that Weizeorick should be estopped from asserting a claim that AAMG violated RESPA because of the actions of Weizeorick's counsel. Therefore, summary judgment in favor of Weizeorick is not appropriate.

Weizeorick has also moved the Court to reconsider the denial of class certification. That motion is DENIED. The problems with Weizeorick as class representative remain. The fact remains that Weizeorick and his wife were initially put forward as class representatives and when AAMG attempted to take their depositions, Margaret Weizeorick withdrew and AAMG was required to get a court order to obtain Gregory Weizeorick's deposition before a court-imposed deadline. Given that Weizeorick's claim is relatively small and given his recalcitrance and his wife's outright refusal to participate in the suit, the Court is not convinced that he is a suitable class representative. Second, even though the third party complaint was dismissed, the fact remains that Weizeorick's claim is shadowed by the specter of Gomolinski's involvement in the real estate transaction and is not typical of the claims of other potential class members. Further, while Gomolinski has not himself appeared in this case, his partners have, which makes Weizeorick's claims atypical from those of other potential class members. As the Court has ruled in this motion, a reasonable finder of fact could conclude that Gomolinski engineered a sham fee split, and it is unlikely that during the closing of any other potential class member a portion of a purported release fee was returned to the potential class member's real estate attorney. AAMG has a colorable defense — that Weizeorick and his counsel have unclean hands — and this defense renders Weizeorick unsuitable as class representative.

Finally, Weizeorick requests that notice be sent pursuant to Rule 23(e) to putative class members informing them of the Court's decision. As the Plaintiff points out, Rule 23(e) only *requires* notice to be sent under certain circumstances. See Fed. R. Civ. P. 23(e); *see also Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 627 (7th Cir. 1986) ("To say that Glidden needed the court's approval is not necessarily to say that no putative class action may be dismissed without notice to every potential member of the class. We stressed in *Simer* that this could be an exceedingly costly burden, and many times it is not necessary to protect the class.") Plaintiff argues that the Court should exercise its authority to require notice to be sent because the case received "publicity when the Seventh Circuit reinstated Plaintiff's RESPA claim." But that very same decision noted (and not in a footnote as Weizeorick claims, but the fourth paragraph of the decision) that Weizeorick had withdrawn the motion for class certification. See *Weizeorick*, 337 F.3d at 829. Weizeorick's argument that potential class members might have learned of the dispute from the Seventh Circuit's opinion reinstating his RESPA claims, yet somehow ignored or disregarded the Seventh Circuit's plain language that the suit proceeded as an individual action is not convincing. Weizeorick's request to provide notice of the denial of class certification is DENIED.

IT IS SO ORDERED.

6/27/05
Dated

The Honorable William J. Hibbler
United States District Court

7